United States Casualty Company, Plaintiff and Appellee, *v.* Porto Rican and American Insurance Company, Defendant and Appellant.

No. O-69-118.    Decided February 6, 1970.

*Martínez-Muñoz, Agrait-Oliveras & Otero* for defendant-appellant. *Roberto De La Torre* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The United States Casualty Co., as subrogee of the Universal C.I.T. Credit Corporation, filed a complaint against the Porto Rican and American Insurance Co., claiming the sum of $1,667.92 which it had paid on August 18, 1966 to subrogor for the damages caused to a Ford automobile, which Esteban Torres had acquired through conditional sale from Southern Auto Sales Corp. The defendant company was the insurer of the owner of the truck which caused the accident.

As a result of said accident, Torres had sued the Porto Rican and American Insurance Co., action which concluded through judgment of compromise of October 21, 1966, indemnifying him with the sum of $2,400,[1] for which he signed a document of discharge and release from subsequent responsibility in favor of said insurance company. Before said judgment was rendered, Torres had signed an assignment of rights and actions in favor of the Universal C.I.T. Credit Corporation, which in its pertinent part reads:

---

[1] In the accident, Torres received personal injuries, and his vehicle had considerable damages which were estimated at $818.61.

"I, the above-mentioned PURCHASER [Torres], by these presents, state that the aforementioned vendor [Southern Auto Sales Corp.], having endorsed the conditional sales contract of the above-mentioned motor vehicle to Universal C.I.T. Credit Corporation, and I, as purchaser, having failed to satisfy the remnant or amount owed in the above-mentioned sum [$2,073.28][2] now I assign and convey to Universal C.I.T. Credit Corporation, all the rights and actions that by virtue of the meritorious conditional sales contract I have over the described motor vehicle, without any reserve or limitation whatsoever; and I do hereby authorize Universal C.I.T. Credit Corporation to sell the same in the form and manner which it deems convenient, and without the need of having to resort to repossession or public auction proceedings."

This assignment was not notified to the Porto Rican and American Insurance Co.

■ The policy under which the United States Casualty Co. made the payment of the $1,667.92 to the Universal C.I.T. Credit Corporation, was one of the so-called automobile combined risks policy, the latter appearing in an indorsement as beneficiary to be indemnified, as interest appears, at the moment of the occurrence of the loss.[3]

The District Court, as well as the Superior Court, held that the above-copied assignment having been made prior to October 21, 1966, the payment performed on that date by the

---

[2] The balance owed by virtue of the conditional sales contract was of $2,073.28. To this sum, $105.36 were credited as uncollected financing expenses and $300 of the amount of the sale of the automobile debris. For that reason the payment of plaintiff to the assignee was of $1,667.92 only.

[3] This indorsement is also known in insurance as single interest. In essence, the indorsee—mortgagee or pledgee, assignee, etc.—is entitled to recover even the unpaid balance of his credit; any remainder belongs to the assignor. Couch, Insurance 2d, § 29:66; Appleman, Insurance Law and Practice, § 3335. See, *American Insurance Co.* v. *First Savings & Loan Ass'n*, 434 S.W.2d 170 (Texas 1968); *World Investment Co.* v. *Manchester Ins. & Indem. Co.*, 380 S.W.2d 487 (Mo. 1964); *Emmco Insurance Co.* v. *Howell*, 154 So.2d 28 (Ala. 1963); *Kolehouse* v. *Connecticut Fire Ins. Co.*, 65 N.W.2d 28 (Wis. 1954).

defendant to Torres, in execution of judgment, did not release it from indemnifying plaintiff, regardless of whether or not it knew of the assignment performed. We agreed to review.

■ (i) A careful reading of the document of assignment is sufficient to reveal that the only thing sought to be assigned therein was any proprietary right which Torres, as conditional vendee, might have in the damaged vehicle. See § 6 of the Conditional Sales Act, 10 L.P.R.A. § 36; *Vélez Cuebas v. Cancel*, 88 P.R.R. 215 (1963), and in general, Litvinoff, *Las Ventas a Plazos en el Derecho Puertorriqueño*. Rather, they were trying to facilitate the salvage of the debris of the vehicle without resorting to the repossession proceeding set forth in the Conditional Sales Act. Hence, the express reference to the impossibility of the purchaser to satisfy what was left of the sum owed under the conditional sales contract. In no manner whatsoever can it be understood that this assignment included the cause of action which was incumbent upon the purchaser for the reparation of the damages caused to the vehicle; *cf. Montalvo v. Valdivieso*, 38 P.R.R. 487, 496 (1928), which issues, not from the conditional sales contract, but from the wrongful act of the person causing the damages.[4]

■ (ii) Even assuming that the assignment had been sufficient to include the action for damages to the vehicle, due to a third-party negligence, plaintiff could not prevail either. Pursuant to § 1417 of the Civil Code, 31 L.P.R.A. § 3942, the debtor who, before having knowledge of the assignment should pay the creditor, shall be released from the

---

[4] Precisely, to have a guarantee in case of disaster as to the amount of the price pending payment, the conditional purchaser is required to pay the proper premium of the policy contained in the stated indorsement. By it the insurer expressly waives any right of subrogation to turn against the purchaser for any sum paid under such coverage.

obligation.[5] For the assignment to have the desired effect against the debtor, it is necessary for the latter to have knowledge of the same. *Cámara Insular, Etc.* v. *Anadón, S. en C.*, 83 P.R.R. 360 (1961). Santamaría, in his II *Comentarios al Código Civil*, at p. 569, says: "Although the assignment of credits is valid, without the debtor's intervention and knowledge being so required, the latter should be notified to provide for the effect of the payment he may confer to the original creditor, or his successors, since . . . the payment made in good faith to the latter releases the debtor and pays off the credit." It would be correct to assert the same thing, on the same grounds, with respect to the assignment of rights and actions. To seek that the one bound to pay indemnity, as the inferior courts adduced, should assert the legality of the claim through an inspection of the public registries in the Department of Public Works—by the way, the only thing it would have revealed is that the vehicle had been acquired by a conditional sale[6]—or through interrogatories in the civil action where it was sued, is to demand a requirement not prescribed by law. What Manresa states about the assignment of credits in his X *Comentarios al Código Civil Español* 410 (5th ed. 1950), is likewise applicable by similarity: ". . . the assignee is the one most interested in the notice, for only after the same is served can he claim the amount of the credit from the debtor; but since the debtor's only ties are with the assignor, and the latter is, until the moment of the assignment, the active subject of the right, the only thing

---

[5] In dealing with the transfer of commercial credits which are not negotiable nor payable to the bearer, § 265 of the Code of Commerce, 10 L.P.R.A. § 1741, reads in that same sense.

[6] Although the document of assignment is dated May 20, the day of the accident, other circumstances, such as the date it was received by the U.S. Casualty on July 28, and the fact that the debris was sold on July 14, tend to indicate that it was executed on or about the month of July.

Neither is there evidence of the conveyance of the license of the vehicle.

which may be valid against the debtor is what the assignor tells him." With more reason, under the circumstances of the case at bar, where it appeared from the document of assignment itself that the truck which caused the accident "is insured with the P.R. & American Insurance." Defendant-appellant complied with its obligation, trusting the juridical appearance of Torres as holder of the cause of action and it cannot be required, in the absence of notice, to make an additional payment for the same concept.

The judgments rendered by the Superior Court, San Juan Part, on May 8, 1969, and the one rendered by the District Court, San Juan Part, on January 18, 1968, will be reversed, and the complaint will be dismissed, with imposition of costs and $500 for attorney's fees.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.